UNITED STATES v. ST. LOUIS & S. F. R. CO.

(Circuit Court, S. D. Missouri, W. D.   April 3, 1901.)

INTERSTATE COMMERCE REGULATIONS—CARRIERS OF LIVE STOCK—FAILURE TO
UNLOAD TRAIN—ACTION FOR PENALTIES—COMPLAINT.

By Rev. St. §§ 4386-4390, no common carrier of live stock conveying
it from one state to another shall confine the same in cars longer than
28 consecutive hours without unloading for rest, water, etc., and a pen-
alty of from $100 to $500 for violating the statute is made recoverable
in the name of the government by a civil action. *Held,* that a carrier's
confinement of a train load of cattle for a longer period than 28 hours
without unloading was a single offense, within the meaning of such
statute; and hence, in an action therefor, separate counts in the com-
plaint or declaration for each car, intended to multiply the penalty by the
number of cars, was not permissible.

The District Attorney, for the United States.
L. F. Parker and John T. Woodruff, for defendant.

ROGERS, District Judge.   This is a suit under sections 4386–4390,
inclusive, of the Revised Statutes of the United States.   There are
ten separate and distinct paragraphs in the complaint.   The first
is as follows:

"Comes now the United States of America, plaintiff in this suit, by Wil-
liam Warner, its attorney in and for the Western district of Missouri, and
files this, its declaration in this cause, and complains of the St. Louis & San
Francisco Railroad Company, a corporation organized and existing under
and by virtue of the laws of the state of Missouri, and a citizen of the said
state of Missouri, and carrying on its business within the Southern division
of the Western district of said state of Missouri, and says:   That the defend-
ant, the St. Louis & San Francisco Railroad Company, is a railway corpora-
tion, and that defendant's road forms part of a line of road over which
cattle, sheep, swine, and other animals are conveyed from one state to an-
other, to wit, from the state of Texas, through the states of Arkansas and
Missouri, to the state of Illinois, and more particularly from Weatherford, in
the said state of Texas, through the state of Arkansas, and through the South-
ern division of the Western district of Missouri, in the state of Missouri, to
the city of St. Louis, in said state of Missouri, and to the city of East St.
Louis, in the said state of Illinois.   That the St. Louis & San Francisco Rail-
road Company, defendant herein, is a railroad corporation within the United
States, whose road, together with the Texas & Pacific Railroad, a corpora-
tion, forms part of a connecting line of railways over which cattle, sheep,
swine, and other animals are transported and conveyed from one state to
another, and more particularly from Weatherford, in the state of Texas, to
said city of St. Louis, in the state of Missouri, and to the city of East St.
Louis, in the state of Illinois.   That on the 4th day of February, A. D. 1901,
at or about 5 o'clock p. m., one William Corn loaded at Weatherford, Texas,
20 cotton-meal fed cattle, weighing 1,290 pounds each, upon Chicago, Rock
Island & Pacific cattle car No. 76,059, which said car was 36 feet in length,
and bore the initials 'C. R. I. & P.'   That the above-described car of cattle
was consigned and shipped by one William Corn, of Mineral Wells, Texas, to
Strayhorn, Hatton & Company, of Chicago, Illinois, with the privilege of the
St. Louis market, by way of the Texas & Pacific Railroad and the St. Louis
& San Francisco Railroad.   That said car was hauled by the said Texas &
Pacific Railroad from Weatherford, Texas, to Paris, Texas, and was then
transferred to the said St. Louis & San Francisco Railroad for the balance of
said trip to St. Louis, Missouri, and to East St. Louis, Illinois, aforesaid.   That
said car left Weatherford, Texas, for its destination at or about 5 o'clock p.
m., February 4, 1901, arrived at Springfield, Missouri, at or about 7 a. m. of

February 6, 1901, and arrived at St. Louis, Missouri, at or about 6 p. m. of February 6. 1901. That on or about the 6th day of February, A. D. 1901, the defendant, having engaged in conjunction with the connecting road aforesaid in conveying said 20 head of cattle so shipped as aforesaid in car No. 76,059, C. R. I. & P., over its said road from Weatherford, in the state of Texas, to St. Louis, in the state of Missouri, through the Southern division of the Western district of Missouri, did within said division of said district knowingly and willfully confine said cattle, and each and every one thereof, in said car, upon said road, without unloading the same for rest and water for the period of five hours in any period for and during a longer period than twenty-eight consecutive hours, to wit, for more than fifty hours, inclusive of the time during which said animals had been confined without such rest and water upon the defendant's road, and upon its said connecting road, to wit, the Texas & Pacific Railroad, from which said connecting railway defendant received said cattle. That neither the said defendant nor its said connecting road was prevented from so unloading the said animals, or any thereof, for said purposes of rest and water, by storm or other accidental cause, and that said animals were not then and there carried by the defendant, or by said connecting road, in cars or other conveyances in which they could and did have proper water, space, and opportunity to rest. Wherefore plaintiff prays judgment against said defendant for the penal sum of five hundred dollars ($500), in accordance with the penalty prescribed by the statutes in such cases made and provided, and for costs in this suit."

All the other paragraphs are precisely the same as the above, except they state a different number of the car upon which the cattle were shipped. It is admitted in argument by the plaintiff, and it inferentially appears so strongly as to make it equivalent to an affirmative allegation, that the separate cars described in each count constituted one and the same train of cars, and it appears that all the cattle were shipped by the same consignor to the same consignee at the same time, and that they arrived at the different places specified in the complaint at the same time. So that it is manifest that the different cars described in the separate paragraphs of the complaint constituted one train, and that the shipment of cattle was one shipment. The motion in this case is to require the plaintiffs either to strike out of their petition or declaration all of the counts but one, or to consolidate them all in one count. I do not think there is any difficulty at all in the construction of the statute. The only question is whether or not the proper remedy has been invoked. I am inclined to the opinion that it has, and that it is the duty of the court to require the plaintiff to elect which one of the ten counts in the complaint he will stand upon, or to require him to consolidate them all in one count. I have not been able to find a single decision bearing upon the precise question involved. I am not aware that the statute in that regard has been construed, but in U. S. v. Boston & A. R. Co. (D. C.) 15 Fed. 209, the question was raised whether the penalty did not attach to the unlawful confinement of each animal. District Judge Nelson held that it did not. He said:

"The confinement of the entire number of animals for a longer period than twenty-eight consecutive hours without unloading for rest, water, and feeding is a single offense, for which the defendants are made liable to the penalty. By no fair construction of the statute can the unlawful confinement of each animal be held to constitute a separate offense, and thus the penalty be multiplied by the whole number of animals carried."

No reason can be assigned, in the opinion of the court, why the unlawful confinement of each car load of animals should be held to constitute a separate offense, and thus the penalty be multiplied by the whole number of car loads shipped, which would not apply with equal force to the unlawful confinement of each animal. Manifestly, if congress had intended to impose upon a railroad company the maximum penalty of $500 for each head of cattle that might be unlawfully confined upon one of its trains, it would not have left it to construction or inference; and it may be with equal propriety said that, if congress had intended to inflict so severe a penalty as $500 for each car load of cattle that might be unlawfully confined, it would not have left it to construction or inference. It was an easy matter for congress to have said, if it had so intended, that the unlawful confinement of each animal or each car load of animals should constitute a separate offense. And in reference to a statute so highly penal as this the construction must be strict,—equally as strict as if it were a statute creating a criminal offense. Nothing must be imported by construction into a penal statute which is not within its spirit and its letter. This statute has already been construed to be highly penal. As said by District Judge Nelson, the plaintiff can only sue for the penalty prescribed by the statute, and in the opinion of the court that penalty attaches to the unlawful confinement of cattle upon a single train of cars, boat, or vessel upon which the cattle are being transported. A careful reading of the statute indicates that, in order to be entitled to the penalty, the cattle, sheep, or swine shall be confined in cars, boats, or vessels, making no distinction whatever between the three modes of conveyance. I am of the opinion, therefore, that the district attorney should be compelled either to elect upon which count in the complaint he will stand, or to consolidate the ten counts in one, either of which he may do at his election; and it is so ordered.